Nash, C. J.
 

 The defendant, a slave, is indicted for passing a counterfeit bank note, knowing it to be counterfeit. The defendant demurred upon the ground of a want of jurisdiction indie Court of Pleas and Quarter Sessions, where the prosecution commenced. The demurrer in the Superior Court, to which the case was carried by appeal, was overruled. In this opinion we do not concur. The indictment is under the 60th sec. of the 34th ch. of the Revi Statutes, which enacts,
 
 “
 
 If any
 
 person
 
 shall directly or indirectly pass, or attempt to pass to any other person, (fee., any false, forged or counterfeit bill or note, <fcc., of any bank or corporation within this State, &c., every
 
 mAxperson
 
 so' offending shall be deemed and adjudged guilty of a felony, and upon conviction, &c., shall be punished with a fine to the use of the State, not exceeding $5,000, and be imprisoned not exceeding three years, standing in the pillory, public whipping, &c., all or any of them, at the discretion of the Court,” &c. The demurrer admits all the facts set forth in the indictment, and the only question we are called on to decide is, whether the statute embraces a slave..
 

 The word
 
 person,
 
 in its ordinary sense, is sufficiently comprehensive to have that effect.
 
 In rerwn natura
 
 slaves are persons
 
 ;
 
 
 *216
 
 they are human beings endowed with intelligence; and with the physical organization appertaining to humanity. With us however, they have another being impressed upon them by the laws. They are a species of property, and are governed by a code of laws different in many respects from that which, go^rns and regulates the conduct of the white man — laws in their general character mild and benevolent, looking as well to their protection as to their restraint. While therefore, for most civil purposes we regal’d them as property, at the same time we guard their lives, limbs and members with the same care that we do'those of the white population. In carrying out this humane policy, the Courts in putting a construction upon penal statutes, have adopted the principle that slaves are not embraced, unless mentioned. They are not embraced for punishment, but they are for protection. This principle was declared by this Court in the case of the
 
 State
 
 v. Small, at June Term, 1844,
 
 *
 
 as clearly sustained by the course of legislation adopted by the Legislature on the subject. In looking over the Acts of the General Assembly, we find that in almost every instance when slaves are the object of legislation, they are called either slaves, negroes, or persons of color, the latter designation being mostly confined to free negroes. Thus in the Act punishing peijury, when committed by a slave, the language is, “if any negro, bond or free,” &c. Rev. Stat. ch. 111, sec.
 
 52.
 
 At the same session, to wit, 1836, in the 50th sec. of the 34th chap., the Legislature provided generally a punishment for the crime of perjury : the language is, “ if any person ” &c. : and in the 51st section, for subornation of perjury, the same phraseology is used,
 
 “if
 
 any person,” (fee. Now both these Acts constitute but different chapters of one Act. It is obvious that the Legislature recognised the principle that to bring slaves within the sweep of a penal law, they must be mentioned. If this was not the view of the Legislature, where was the necessity of the provision in the 111th chapter? If by
 
 “
 
 persons” were meant
 
 slaves,
 
 the crime when perpetrated by one of them, was already provided for by the 34th chapter. When it is said they
 
 *217
 
 are embraced for protection, though not named, it is meant that the law protects them from illegal violence. Many other statutes might be enumerated in which slaves are mentioned as slaves, where particular acts are made criminal. Independently however of this legislative example of the use of the word
 
 “
 
 person,” the opinion of the Court in the case of
 
 Small
 
 recognizes another principle of conduction of such statutes, equally decisive of the question involved in this case, and equally satisfactory. It is the nature of the penalty attached to the crime. Upon conviction, the criminal is to be fined not exceeding $5,000, to be imprisoned not more than three years, pilloried, whipped,
 
 &c.
 
 — all or
 
 any.
 
 Now can it be supposed for a moment that the Legislature had slaves in their contemplation, when they affixed
 
 these
 
 penalties to the Act? The idea is preposterous. Dwarris on Statutes, 692. It is no answer that the presiding Judge
 
 may
 
 whip instead of fine ; so he may, and he has by law the power to inflict a fine instead 'of a whipping; and by the same law he may inflict the whole penalty on the prisoner, which shows, in our opinion, that the word person, as used .in the Act of Assembly under which this indictment is framed, does not extend to slaves.
 

 The offence of the prisoner not being the proper subject of an indictment, neither the County nor the Superior Court had jurisdiction. We are not called on to say whether the Act complained of is cognizable by a single magistrate. The judgment of the Superior Court is erroneous. This opinion to b.e certified.
 

 Per Cueiam. Judgment reversed, and demurrer sustained.
 

 *
 

 This case was not reported. — Rep.